BARKSHIRE *v.* THE STATE.

A negro man residing in this state, by marrying a negro woman who has come into the state since the adoption of the constitution, and living with her, is liable to a fine by virtue of the 13th article of the constitution and the act of 1852 to enforce its provisions; and the marriage itself is void.

APPEAL from the *Ohio* Court of Common Pleas.

STUART, J.—This was a proceeding by complaint against *Barkshire,* for bringing a negro woman into this state in *June,* 1854, and harboring her here, in contravention of the constitution and laws of *Indiana.* Trial by the Court, finding guilty, and fine 10 dollars. *Barkshire* appeals.

The facts agreed upon by the parties are briefly these: That *Arthur Barkshire,* the defendant, is a man of color; that he has resided in *Rising Sun, Indiana,* for the last ten years; that since the adoption of the constitution on the 1st of *November,* 1851, said *Arthur* married a colored woman by the name of *Elizabeth Keith,* who now resides with him as his wife in *Ohio* county, Indiana; that the marriage was solemnized in this state; that *Elizabeth* moved to the state of *Indiana,* during the summer of 1854, from the state of *Ohio,* where she had long resided; that *Elizabeth* is a negro or mulatto; and that the defendant lived with her and harbored her as his wife in *Rising Sun,* before and at the time of information filed.

The only question presented by the record, is, does this evidence warrant the conviction?

The 13th article of the constitution provides that upon the adoption of that instrument in *November,* 1851, no negro or mulatto shall come into or settle in the state; that all contracts made with those coming in, contrary to such prohibition, shall be void; that to employ or encourage such negro to remain in the state, shall be punishable by fine; that all such fines shall be appropriated to colonization; and that the general assembly shall pass laws to carry the provisions of the article into effect. 1 R. S., p. 67.

Accordingly, the general assembly passed an act to enforce the 13th article of the constitution. Section 7 of

that enactment reads—"Any person who shall employ a negro or mulatto who shall have come into the state of *Indiana*, subsequent to the thirty-first day of *October*, one thousand eight hundred and fifty-one, or shall hereafter come into the said state, or who shall encourage such negro or mulatto to remain in the state, shall be fined in any sum not less than ten dollars nor more than five hundred dollars." 1 R. S., p. 375.

At the same session another act was passed, to provide for the colonization of negroes, mulattoes, &c., who were residents of this state on the 1st day of *November*, 1851, and appropriating 5,000 dollars for that purpose. 1 R. S., p. 222.

The policy of the state is thus clearly evolved. It is to exclude any further ingress of negroes, and to remove those already among us as speedily as possible. The 13th article of the constitution, inaugurating this policy, was separately submitted to a vote of the people, under the title of "exclusion and colonization of negroes." It is matter of history how emphatically it was approved by the popular voice.

The marriage solemnized in *Ohio* county, *Indiana*, is urged as an exception taking the case out of the statute. But such an exception can not be admitted, both because no such exception is recognized either in the constitution or in the law enacted to give it effect, and because the marriage itself, solemnized in contravention of both, must be regarded as void. Marriage, in this state, is but a civil contract. As such it is clearly embraced in the constitutional provision, copied into the subsequent law, which declares all contracts made with negroes and mulattoes coming into the state contrary to the provisions of the 13th article, void. The consequences are not a legitimate consideration for the Courts. A constitutional policy so decisively adopted, and so clearly conducive to the separation and ultimate good of both races, should be rigidly enforced. So that *Barkshire* can claim nothing from the supposed relation of husband and wife. To give that relation any consideration favorable to him, would be to

countenance an infraction of the fundamental law. *Bark-* shire can, therefore, be regarded only as any other person would be who encouraged the negro woman *Elizabeth* to remain in the state.

It may not be improper to observe, though not before the Court in this case, that *Elizabeth* herself seems to be liable under the 9th section of the act, to the same penalties for coming into the state or settling here.

*Per Curiam.*—The judgment is affirmed with costs.

*J. S. Jelley* and *J. W. Gordon*, for the appellant.